Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone:   (818) 839-2333
Facsimile:    (818) 986-9698

Attorneys for Plaintiffs
KATHY SHAW, individually, and on
behalf of other members of the public
similarly situated

*Additional Counsel Listed Below*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHY SHAW AND HARTWELL STEELE, individually, and on behalf of other members of the public similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> NISSAN NORTH AMERICA, INC. a California corporation, and NISSAN JIDOSHA KABUSHIKI KAISHA d/b/a NISSAN MOTOR CO., LTD., a publicly traded company in Japan, <br><br> Defendants. | Case Number: <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> (1)   Violation of 18 U.S.C. § 1962(c), The Racketeer Influenced and Corrupt Organizations Act <br><br> (2)   Violation of 18 U.S.C. § 1962(d), The Racketeer Influenced and Corrupt Organizations Act <br><br> **Jury Trial Demanded** |

Plaintiffs Kathy Shaw and Hartwell Steele ("Plaintiffs"), individually and on behalf of all other members of the public similarly situated, alleges as follows:

1.    This is a consumer class action concerning Nissan North America, Inc. ("Nissan USA" or "NNA") and Nissan Jidosha Kabushiki Kaisha d/b/a Nissan Motor Co., Ltd.'s ("Nissan Japan" or "NML") (collectively, "Nissan") operation of a Racketeer Influenced and Corrupt Organizations Act ("RICO") enterprise, which included their supplier BorgWarner, Inc., and which was formed for the purpose of concealing the scope and nature of the Timing Chain Tensioning System (as defined below) defects in order to sell more Subject Nissan Vehicles (as defined below) at a higher price or for a higher profit, and to avoid incurring the expenses associated with repairing the Timing Chain Tensioning System defects, or the expenses associated with safety recalls. Through this enterprise, Nissan conducted a pattern of racketeering activity.

2.    The timing chain tensioning system, including the primary timing chain tensioner, primary timing chain guide, secondary timing chain tensioners, and secondary timing chain tensioner shoes (the "Timing Chain Tensioning System") installed in 2004 –2008 Nissan Maxima vehicles, 2004 – 2009 Nissan Quest vehicles, 2004 – 2006 Nissan Altima vehicles (with the VQ35 engine), 2005 – 2007 Nissan Pathfinder vehicles, 2005 – 2007 Nissan Xterra vehicles, and 2005 – 2007 Nissan Frontier vehicles (with the VQ40 engine) (collectively, the "Subject Nissan Vehicles") is prone to premature failure and cannot be reasonably repaired.

3.    The Subject Nissan Vehicles were designed, manufactured, imported, distributed, marketed, and maintained, by, or at the direction of Nissan.

4.    Nissan's failure to disclose material facts to consumers who purchased or leased the Subject Nissan Vehicles presents a safety concern for drivers and occupants of the vehicles, and it has caused consumers to suffer significant monetary damages.

# INTRODUCTION

5.      The Timing Chain Tensioning System installed in the Subject Nissan Vehicles is prone to premature failure, before the end of the useful life of the vehicles, and well before consumers reasonably expect any such failure to occur.  Plaintiffs are informed and believe, and based thereon, allege that a vehicle's Timing Chain Tensioning System is intended and reasonably expected by Nissan and consumers to last for at least ten years, if not more, without the need for repair or replacement.

6.      Plaintiffs allege, upon information and belief, that no later than 2003, Nissan was made aware that the Timing Chain Tensioning System installed in the Subject Nissan Vehicles is prone to premature failure through its own testing and testing results received from its manufacturer and supplier of the defective Timing Chain Tensioning System, BorgWarner, Inc. ("BorgWarner").  Nevertheless, Nissan continued to install the defective Timing Chain Tensioning System in the Subject Nissan Vehicles knowing that it is prone to premature failure and BorgWarner continued to supply Nissan with the defective Timing Chain Tensioning System.  Moreover, Nissan not only refused to disclose the problem to consumers, but it also actively concealed, and continues to conceal, its knowledge concerning the Timing Chain Tensioning System defects.

7.      Nissan undertook affirmative efforts to conceal the failures through, among other things, Technical Service Bulletins ("TSBs") issued to repair facilities, and by giving "goodwill" adjustments to reduce the costs of repairs for some customers who complained, but failing to do so for other customers who did not complain.  Although Nissan was sufficiently aware of the problem as a result of pre-production testing, design failure mode analysis, and customer complaints made to dealers, all of this knowledge and information was exclusively in the possession of Nissan and its network of dealers and therefore, it was unavailable to consumers.

8.      Additionally, notwithstanding its knowledge of the potential safety concerns associated with Timing Chain Tensioning System defects, Nissan chose to

issue multiple TSBs to Nissan dealerships, informing them that it was necessary to replace certain elements of the Timing Chain Tensioning System, but Nissan did not inform consumers about the TSBs. Furthermore, Nissan's TSBs failed to provide a permanent solution to remedy all of the Timing Chain Tensioning System defects. Instead, Nissan concealed its knowledge of the issues and failed to develop a permanent solution so that the warranty period on the Subject Nissan Vehicles would expire before owners become aware of the problem. Through this practice, Nissan unlawfully transfers the cost of replacement from itself to the owners of the Subject Nissan Vehicles.

9.      As a result of Nissan's failure to disclose the fact that the Timing Chain Tensioning System installed in the Subject Nissan Vehicles is defective and prone to unavoidable premature failure, consumers are required to spend thousands of dollars to repair the Timing Chain Tensioning System, or sell their vehicles without repair at a substantial loss. The fact that the Timing Chain Tensioning System is prone to premature failure is material because no reasonable consumer expects to spend thousands of dollars to repair or replace essential components of the Subject Nissan Vehicles' engines in the early years of vehicle ownership.

10.      Furthermore, the fact that the Timing Chain Tensioning System is prone to sudden premature failure is material to consumers because it presents a serious safety issue and places the driver and passengers at a risk of harm. The Timing Chain Tensioning System is an integral component of the Subject Nissan Vehicles' engines. When the Timing Chain Tensioning System fails, it can cause a variety of problems for the Subject Nissan Vehicles, including the inability accelerate and maintain speed, as well as catastrophic engine failure, among other issues. When any of these occur while the vehicles are in motion, occupants of the vehicles are exposed to rear end collisions and other accidents caused by the driver's inability to maintain an appropriate speed on the road.

11.    The fact that the Timing Chain Tensioning System is prone to premature failure is also material to consumers because there is no safe alternative way for owners of the Subject Nissan Vehicles to avoid the risk of potential harm.  As a result of its failure to disclose the material fact that the Timing Chain Tensioning System installed in the Subject Nissan Vehicles is prone to premature failure, Nissan has recklessly placed the safety of owners and occupants of the Subject Nissan Vehicles at risk.

12.    Plaintiffs and other members of the Class (as defined below) would not have bought the Subject Nissan Vehicles had they known that the Timing Chain Tensioning System installed is prone to unavoidably dangerous and premature failure. When Plaintiffs and other members of the Class purchased the Subject Nissan Vehicles, they relied on their reasonable expectations that the Subject Nissan Vehicles would not pose an unavoidable safety risk.

13.    Furthermore, had Nissan disclosed to consumers the material fact that the Timing Chain Tensioning System is prone to unavoidable premature failure and required replacement, Subject Nissan Vehicle owners would have required Nissan to replace the Timing Chain Tensioning System before the five-year warranty periods expired. Nevertheless, notwithstanding Nissan's awareness of the safety defect, Nissan never disclosed these material facts to consumers at the time at the time of purchase, before the warranty expired, nor anytime thereafter.

## JURISDICTION AND VENUE

14.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class (as defined below) are citizens of states different from Defendant.  Further, greater than two-thirds of the members of the Class reside in states other than the states in which Defendant is a citizen.

15.    Jurisdiction is also proper in this Court under 28 U.S.C. § 1331 based upon the federal RICO claims asserted under 18 U.S.C. § 1961, *et seq.*

16.     Venue lies within this judicial district under 18 U.S.C. § 1965 and 28 U.S.C. § 1391(a), (b)(2) and (c) because Nissan has sufficient contacts with this District to subject it to personal jurisdiction in this District, and a substantial part of the events and omissions giving rise to the claims asserted in this Complaint occurred within this District.

## PARTIES

17.     Plaintiff Kathy Shaw is a resident of Tampa, Florida.

18.     Plaintiff Hartwell Steele is a resident of Rock Island, Illinois.

19.     Defendant Nissan North America, Inc. is a California corporation doing business in California, with its current principal place of business located at One Nissan Way, Franklin, Tennessee, 37067.  From 1960 until July 2006, Nissan North America, Inc. was headquartered in this District, in Gardena, California, where, as of July 2006, it employed approximately 1,300 people.  From its Gardena offices, Nissan North America, Inc. managed sales, marketing, product planning, corporate planning, communications, and training.  Nissan North America, Inc. is and has always been a California corporation.

20.     Defendant Nissan Jidosha Kabushiki Kaisha d/b/a Nissan Motor Co., Ltd. is the parent company of Nissan North America, Inc.  Nissan Motor Co., Ltd. is publicly traded in Japan.  Nissan Motor Co., Ltd. has been found to be subject to personal jurisdiction in this District as a result of its involvement in activities at issue here.  Plaintiffs are informed and believe that executives and employees of Nissan Motor Co., Ltd. regularly traveled to this District to meet with representatives of Nissan North America, Inc. while Nissan North America, Inc. had its headquarters in Gardena, California.

21.     The Subject Nissan Vehicles were designed, manufactured, imported, distributed, marketed, and maintained, by, or at the direction of Nissan.

22.     Plaintiffs allege, upon information and belief, that Nissan USA communicates with Nissan Japan concerning virtually all aspects of the Subject Nissan

Vehicles sold in the United States, through mail and wire, and such communications targeted the Timing Chain Tensioning System.

23.     Plaintiffs allege, upon information and belief, that Nissan USA regularly and routinely provided feedback to Nissan Japan regarding the distribution, sale, lease, servicing, and warranting of the Subject Nissan Vehicles, including the Timing Chain Tensioning System issues, and regularly and routinely provided information and approval concerning the testing of the Timing Chain Tensioning System, the implementation of design changes and the implementation of countermeasures.

24.     Plaintiffs allege, upon information and belief, that Nissan USA and Nissan Japan communicated with BorgWarner, beginning no later than 2003, on numerous occasions about the defective Timing Chain Tensioning System used in the Subject Nissan Vehicles.

25.     Whenever, in this Complaint, reference is made to any act, deed or conduct of Nissan, the allegation means that Nissan engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control or transaction of the ordinary business and affairs of Nissan.

## FACTUAL BACKGROUND

26.     Nissan is known throughout the United States and internationally as a major manufacturer of automobiles and related products, which are sold under the Nissan and Infiniti brands.

27.     Doing business as Jidosha Seizo Co., Ltd., Nissan first established operations in 1933, and began production of motor vehicles shortly thereafter. Exportation of passenger cars to the United States began in 1958.  The cars were then sold under the Datsun brand.  In or about September 1960, Nissan Motor Corporation, now Nissan North America, Inc., opened for business in the United States.

28.     Nissan designed, manufactured, imported, distributed and marketed the Subject Nissan Vehicles in the United States, including California.  Nissan also provides

maintenance services for the Subject Nissan Vehicles through its nationwide network of authorized dealers and service providers.

29.     The Subject Nissan Vehicles are equipped with a defective Timing Chain Tensioning System that fails prematurely, before the end of the useful life of the Subject Nissan Vehicles.  Plaintiffs are informed and believe, and on that basis allege that a vehicle's Timing Chain Tensioning System is intended and reasonably expected to last at least ten years, if not more, without the need for repair and replacement.

30.     The timing chain system, which includes the Timing Chain Tensioning System, is an integral component of a functioning internal combustion engine.  It is responsible for connecting the engine's camshaft to the crankshaft, which in turn control the opening and closing of the engine's valves.  These activities must occur at certain, specific time intervals.  In particular, proper engine functioning requires that the valves open and close in a precise synchronized manner, which is coordinated with the up and down movement of the pistons.  The timing chain system, including the Timing Chain Tensioning System is responsible for ensuring that this occurs.

CLASS ACTION COMPLAINT

31.    The following figure shows the timing chain system, the Timing Chain

Tensioning System, and related components (tensioners and guides identified in red):

**Figure 1:**
(Diagram showing Timing Chain Tensioning System used in Subject Nissan Vehicles)



32.    When, as a result of the Timing Chain Tensioning System defects, the

Subject Nissan Vehicles' Timing Chain Tensioning System fails, it sets off a chain

reaction, causing extensive damage to the Subject Nissan Vehicle and, ultimately,

complete destruction of the engine.  A malfunction in the Timing Chain Tensioning

System can cause the Subject Nissan Vehicles' pistons and valves to smash into one

another.  This, in turn, leads to catastrophic engine failure.  Timing Chain Tensioning

System failure also causes increased vehicle emissions and worsening fuel economy, as

well as the inability of the Subject Nissan Vehicles to accelerate, maintain speed, and

idle smoothly.

33.    Consequently, owners of the Subject Nissan Vehicles are required to incur

substantial costs to replace the defective Timing Chain Tensioning System, or to repair

1   or replace the Subject Nissan Vehicles' damaged or irreparably destroyed engines.

2   Depending on the extent of damage to the Subject Nissan Vehicles' engines, owners

3   suffer monetary damages in the thousands of dollars. At times, the cost of repair or

4   replacement is greater than the value of the Subject Nissan Vehicles at the time of the

5   premature failure.

6        34.    Additionally, because the Timing Chain Tensioning System can fail without

7   warning, leaving drivers unable to accelerate and maintain speed, or potentially with a

8   completely destroyed and inoperable engine, this defect poses a serious safety concern

9   that is not reasonably avoidable. Occupants, thus, are placed at risk of being struck by

10  other vehicles in traffic.

11       35.    Indeed, the safety risk associated with the Timing Chain Tensioning System

12  defect is not merely theoretical. As reflected in Exhibit A, Timing Chain Tensioning

13  System failures have caused vehicles to stop running while traveling at highway speeds.

14  / / /

15  / / /

16  / / /

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

36.     Images of the defective Timing Chain Tensioning System installed in the Subject Nissan Vehicles appear as follows:

**Figure 2:**
(Primary timing chain guide, slack side, properly seated)

**Figure 3:**
(Clip on the top of the primary timing chain guide breaks, and the part of guide that is in contact with the chain slides out of position)




**Figure 4:**
(After the primary timing chain guide slips out of position, the primary timing chain guide becomes unseated from the tensioner arm)

**Figure 5:**
(With the primary timing chain guide unseated, the plunger for the primary timing chain tensioner begins to press into bare metal, and damage leading to engine failure begins to occur)





**Figure 6:**
(Premature failures of the Timing Chain Tensioning System installed in the Subject Nissan Vehicles also stem from worn secondary timing chain tensioners, which are made from an inferior design and substandard materials)



37.     Plaintiffs allege, upon information and belief, that reasonable alternative designs exist for Timing Chain Tensioning System, and that Nissan and BorgWarner were aware of these reasonable alternatives at the time of manufacture and installation.

## Nissan's Knowledge of the
## Timing Chain Tensioning System Defects

38.     Nissan had superior and exclusive knowledge of the Timing Chain Tensioning System defects, and knew, or should have known, that the defects were not known or reasonably discoverable by Plaintiffs and other members of the Class (defined below) before they purchased or leased the Subject Nissan Vehicles, or before the warranty on their vehicles expired.

39.     Plaintiffs allege, upon information and belief, that since no later than 2003, Nissan acquired its exclusive knowledge of the Timing Chain Tensioning System defect through sources not available to Plaintiffs and other members of the Class including, but not limited to, pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Nissan's network of dealers and directly to Nissan, aggregate warranty data compiled from Nissan's network of dealers, testing conducted by Nissan in response to consumer complaints, repair order and parts data received by Nissan from Nissan's network of dealers, and internal testing conducted by BorgWarner.

40.     Plaintiffs allege, upon information and belief, that Nissan and BorgWarner communicated, no later than 2003, about the scope and nature of the Timing Chain Tensioning System defects.

41.     Plaintiffs allege, upon information and belief, that Nissan and BorgWarner conducted their own testing to confirm the defective nature of the Timing Chain Tensioning System no later than 2003, and shared those results among each other.

42.     Plaintiffs allege, upon information and belief, that notwithstanding the above, Nissan and BorgWarner were well aware of the Timing Chain Tensioning System defects, both Nissan and BorgWarner kept it a secret, and Nissan failed to

disclose the problem to consumers at the time of purchase or lease, and thereafter, even as it continued to sell vehicles manufactured with a defective Timing Chain Tensioning System that were prone to premature and unsafe failures.

43.    Plaintiffs allege, upon information and belief, that BorgWarner also continued to manufacture and supply Nissan with the defective Timing Chain Tensioning System, knowing they would be installed in Subject Nissan Vehicles.

44.    Rather than disclose its knowledge of this material information regarding the Timing Chain Tensioning System defects, Nissan actively conceals its knowledge from consumers.  Indeed, to this day, Nissan refuses to offer an adequate remedy, or even publicly disclose the problem.

45.    Plaintiffs allege, upon information and belief, that commencing in late 2005 and continuing into 2006, Nissan USA issued a series of reports addressing the various defects plaguing the Timing Chain Tensioning System.  The reports discussed field incidents concerning defects associated with the Timing Chain Tensioning System, and the results of Nissan's internal testing.  The reports discussed the need for design improvements to the slack guide, the concerns associated with the loss of part function, and damage to the surrounding parts.  The reports also noted that changes should be implemented as soon as possible to prevent additional issues with the current design.

46.    Plaintiffs allege, upon information and belief, that as a result of Nissan's extensive internal knowledge of the Timing Chain Tensioning System defects, in or around 2006 and 2007, Nissan analyzed and ultimately, redesigned one of the defective Timing Chain Tensioning System components, the primary timing chain guide, slack side.

47.    As illustrated in Figure 1 above, the primary timing chain guide is attached to a fixed pivot.  A tensioner is located on the opposite end of the fixed pivot.  The tensioner applies pressure to the chain guide, and the guide swivels from the pivot point to apply pressure to the timing chain.  The pressure from the guide takes up the slack in the chain and keeps the chain taught so that it does not jump teeth or move out of place.

Failure of the chain guide leads to catastrophic engine failure.

48.    The primary timing chain guide was initially identified as part number 13091-7Y000.  In or around 2006 and 2007, Part number 13091-7Y000, however, was analyzed, redesigned, and superseded by part number 13091-ZK00A.  To conceal its knowledge of the Timing Chain Tensioning System defects, Nissan has not disclosed the fact that it redesigned the chain guide to the public.

49.    The redesigned primary chain guide (13091-ZK00A) is made with a thicker plastic material, and it has a more durable "hook" shape at the top so that, unlike the original design (13091-7Y000), it will not break, slide down the arm, and become unseated from the tensioner.

/ / /

/ / /

/ / /

50.    The redesigned and original primary timing chain guide appear as follows:

**Figure 7:**
(Redesigned primary timing chain guide, Nissan Part Number 13091-ZK00A)



**Figure 8:**
(Original primary timing chain guide, Nissan Part Number 13091-7Y000)



**Figure 9:**
(Original primary timing chain guide, slack side, 13091-7Y000, as installed in a Subject Nissan Vehicle, broken at the top and unseated from the tensioner.)



**Figure 10:**
(Redesigned primary timing chain guide, slack side, 13091-ZK00A, as installed in a Subject Nissan Vehicle, made of a thicker black plastic material and featuring a curved "hook" shape at the top to keep the guide in position.)



**Technical Service Bulletins**

51.     In addition to the above, and as a result of Nissan's internal knowledge regarding the Timing Chain Tensioning System defect, Nissan issued multiple Technical Service Bulletins ("TSBs") to its dealerships beginning on or around July 2007.  Indeed, in the TSBs, Nissan demonstrated its knowledge that components of the Timing Chain Tensioning System were so defective that they were beyond repair -- they needed to be replaced entirely.

52.     Plaintiffs are informed and believe that the first TSB (Reference No. NTB07-042), issued on or around July 17, 2007, entitled "**VQ ENGINE; BUZZING / WHINING NOISE FROM TIMING CHAIN AREA**" instructed technicians to "[r]eplace **both** secondary timing chains and **both** secondary timing chain tensioners" (emphasis in original).  This TSB applied to 2004 – 2007 Nissan Maxima vehicles, 2004 – 2007 Nissan Quest vehicles, 2004 – 2006 Nissan Altima vehicles (with VQ35 engines), 2005 – 2007 Nissan Pathfinder vehicles, 2005 – 2007 Nissan Xterra vehicles, and 2005 – 2007 Nissan Frontier vehicles (with VQ40 engines).  Despite this serious safety issue that affected six models of the Subject Nissan Vehicles, Plaintiffs are informed and believe, and on that basis, allege that rather than disclose the problem to the public and offer an adequate solution, Nissan attempted to conceal it.

53.     Nissan issued another on April 17, 2009 (Reference No. NTSB07-042a), informed technicians that a buzzing or whining noise, coming from the secondary time chain or camshaft sprocket areas, indicated that the secondary timing chains and secondary timing tensioners were faulty and needed to be replaced.  This TSB applied to 2004 – 2007 Nissan Maxima vehicles, 2004 – 2006 Nissan Altima vehicles (with VQ35 engines), 2005 – 2007 Nissan Pathfinder vehicles, 2005 – 2007 Nissan Xterra vehicles, and 2005 – 2007 Nissan Frontier vehicles (with VQ40 engines).

54.     Nissan issued another TSB on December 14, 2009 (Reference No. NTSB07-042c) regarding the defective Timing Chain Tensioning System.  This TSB applied to 2004 – 2008 Nissan Maxima vehicles, 2004 – 2006 Nissan Altima vehicles (with VQ35 engines), and 2004-2009 Nissan Quest vehicles.  This TSB informed technicians that a high frequency buzzing or whining noise coming from the secondary timing chain system, which increased in frequency with engine speed, indicated that the secondary timing chains and the secondary timing chain tensioner "shoes" were faulty and needed to be replaced.

55.     Despite issuing multiple TSBs regarding this safety defect, Nissan still refused to disclose the problem to consumers.  Nissan concealed this material information from owners of the Subject Nissan Vehicles, making it less likely that they would have defective components of their Timing Chain Tensioning System replaced prior to the expiration of their warranties.   Instead, Nissan unlawfully transferred the cost of replacement of the Timing Chain Tensioning System to owners of the Subject Nissan Vehicles.

56.     Moreover, in 2009, Nissan issued a press release representing that the Subject Nissan Vehicles featured a "silent timing chain," not the "whining" and "buzzing" one that it knew consumers were actually experiencing in their vehicles. Specifically, the press release[1] stated:

> Like others in the VQ family, the 4.0-liter version includes such advanced design features as lightweight aluminum block and cylinder heads, Continuous Valve Timing Control (CVTCS), Nissan variable Induction Control System (NICS), silent timing chain and microfinished camshaft and crankshaft surfaces.

---

[1] *See* http://nissannews.com/en-US/nissan/usa/channels/us-united-states-nissan-models-xterra/presskits/2009-nissan-xterra-press-kit-3 (last visited May 24, 2016).

CLASS ACTION COMPLAINT

**National Highway Traffic Safety Administration Complaints**

57.    Notwithstanding the TSBs and other evidence concerning Nissan's exclusive, internal knowledge of the Timing Chain Tensioning System defects, Nissan's awareness of the fact that the Timing Chain Tensioning System in the Subject Nissan Vehicles is defective and prone to premature failure is evidenced by the numerous complaints concerning the issue that have been made to the National Highway Traffic Safety Administration ("NHTSA").  Nissan monitored NHTSA databases as part of its ongoing obligation to identify potential defects in its vehicles.

58.    But, even in the face of these complaints, Nissan continues to refuse to disclose to consumers that there is a problem with the Timing Chain Tensioning System, and it continues to put owners of the Subject Nissan Vehicles and their occupants at risk.

59.    A small sampling of some of the complaints regarding the premature failure of the Timing Chain Tensioning System reported to the NHTSA is as follows:
Date Complaint Filed: 10/31/2006
Component(s): POWER TRAIN
Date of Incident: 08/21/2006
NHTSA ID Number: 10172303

Vehicle Make NISSAN
Model QUEST
Model Year(s) 2004
Crash:No
Fire:No
Number of Injuries:0
Number of Deaths:0
Manufacturer: Nissan North America, Inc.
Vehicle Identification No. (VIN): Not Available

SUMMARY:
A LOUD TICKING SOUND WHEN STARTING UP COLD FOR ABOUT 5 MINUTES BEFORE IT WARMS UP. WE REPORTED THIS A FEW MONTHS AGO AND WERE TOLD THAT IT WAS THE VARIABLE TIMING CHAIN, THEN WERE TOLD NO IT'S NORMAL, THEN IT'S THE VTC, NO THE ENGINEER SAYS IT'S NORMAL. THEY ARE REFUSING TO REPAIR. IT IS NOT A NORMAL SOUND. *NM

Date Complaint Filed: 01/31/2007
Component(s): ENGINE AND ENGINE COOLING
Date of Incident: 11/17/2006
NHTSA ID Number: 10181206
Vehicle Make NISSAN
Model QUEST
Model Year(s) 2005

Crash:No
Fire:No
Number of Injuries:0
Number of Deaths:0
Manufacturer: Nissan North America, Inc.
Vehicle Identification No. (VIN): Not Available

SUMMARY:
TL *- THE CONTACT CALLED REGARDING A 2005 NISSAN QUEST. THE CONTAC (sic) HAD MAJOR REPAIRS DONE IN DECEMBER 2007 (sic). THE NISSAN DEALER TOOK THE ENGINE APART TO REPLACE THE TIMING BELT. SINCE THEN WHEN THE HEATER WAS ON AND THE VEHICLE STOPPED THE HEATER FAN WILL STOP WORKING, AND HE HEARD A HUMMING NOISE. ONCE HE RESUMED DRIVING HE HEARD A CLICKING SOUND ON THE DRIVER'S SIDE AND THEN ON THE PASSENGER SIDE, THEN THE HEAT WILL START WORKING AGAIN. THE CONTACT STATED THAT HAD NOT HAPPENED BEFORE THE REPAIR SERVICE. THE CONTACT STATED THAT A MECHANIC AT NISSAN LOOKED AT THE VEHICLE AND SAID THAT IT WAS SUPPOSE TO DO THAT. *AK

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

Date Complaint Filed: 04/07/2008
Component(s): ENGINE AND ENGINE COOLING , POWER TRAIN
Date of Incident: 07/25/2007
NHTSA ID Number: 10223562

Vehicle Make NISSAN
Model MAXIMA
Model Year(s) 2004

Crash:No
Fire:No
Number of Injuries:0
Number of Deaths:0
Manufacturer: Nissan North America, Inc.
Vehicle Identification No. (VIN): 1N4BA41E04C...

SUMMARY:
NISSAN TRANSMISSION AND TIMING CHAIN ISSUES. PLEASE SEE
ATTACHED COMMENTS WHICH DEMONSTRATE EXTENT OF PROBLEM.
NISSAN AND THEIR DEALERSHIP SHOULD ASSUME RESPONSIBILITY FOR
THIS OBVIOUS DEFECT.
HTTP://WWW.CARSURVEY.ORG/VIEWCOMMENTS_REVIEW_61092.HTML. *TR

/ / /

/ / /

/ / /

Date Complaint Filed: 07/22/2008
Component(s): POWER TRAIN
Date of Incident: 07/10/2008
NHTSA ID Number: 10235248
Vehicle Make NISSAN
Model PATHFINDER
Model Year(s) 2005

Crash:No
Fire:No
Number of Injuries:0
Number of Deaths:0
Manufacturer: Nissan North America, Inc.
Vehicle Identification No. (VIN): 5N1AR18W85C...

SUMMARY:
THE DEALER POINTED OUT THAT THERE WAS A BUZZING / WHINING
NOISE COMING FROM ONE OR BOTH SECONDARY TIMING CHAINS AND
CAMSHAFT SPROCKET AREAS. I HAD TO REPLACE BOTH SECONDARY
TIMING CHAINS AND BOTH SECONDARY TIMING CHAIN TENSIONERS AT
61,000 MILES. COST: $2,148.00. PLEASE SEE NISSAN TECHNICAL SERVICE
BULLETIN: CLASSIFICATION: EM07-001 NTB07-042. REFERENCE: DATE:
JULY 17, 2007. I BELIEVE THIS ITEM SHOULD BE A RECALL. THIS IS
OBVIOUSLY A MISTAKE ON NISSAN¿S BEHALF WHEN THEY USED
INAPPROPRIATE AND UNSAFE PARTS. I ASKED NISSAN TO COVER THIS
ITEM UNDER WARRANTY, WHICH THEY QUICKLY REFUSED. I WAS 1,000
MILES PAST MY DRIVE TRAIN WARRANTY BUT THIS HAD BEGUN WAY
BEFORE THAT POINT. I FIND IT BOTH AMUSING AND CONVENIENT THAT
NISSAN NEVER MENTIONED THIS PROBLEM TO ITS CUSTOMERS, AND ME
SPECIFICALLY UNTIL I WAS OUT OF WARRANTY; THE SERVICE REPORT IS
DATED JULY 17, 2007, EXACTLY ONE YEAR PRIOR TO MY VEHICLE
NEEDING REPAIR. I BELIEVE THIS IS A CLEAR ADMITTANCE OF GUILT ON
BEHALF OF NISSAN. *TR

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

Date Complaint Filed: 08/08/2008
Component(s): ENGINE AND ENGINE COOLING
Date of Incident: 01/01/2008
NHTSA ID Number: 10237496
Vehicle Make NISSAN
Model MAXIMA
Model Year(s) 2004

Crash:No
Fire:No
Number of Injuries:0
Number of Deaths:0
Manufacturer: Nissan North America, Inc.
Vehicle Identification No. (VIN): Not Available

SUMMARY:
2004 NISSAN MAXIMA SE. FRONT RIGHT TICKING SOUND. DEALER
EVALUATED THE CAR AND SAID IT WAS A PRIMARY AND SECONDARY
TIMING CHAIN PROBLEM. SAID I NEEDED A REPLACEMENT. I'M TOLD BY
ANOTHER NON-NISSAN DEALER THAT THIS IS SO COMMON IT SHOULD BE
LISTED AS A RECALL. *TR

Date Complaint Filed: 09/12/2010
Component(s): ENGINE AND ENGINE COOLING
Date of Incident: 09/11/2010
NHTSA ID Number: 10355115

Vehicle Make NISSAN
Model FRONTIER
Model Year(s) 2006

Crash:No
Fire:No
Number of Injuries:0
Number of Deaths:0
Manufacturer: Nissan North America, Inc.
Vehicle Identification No. (VIN): 1N6AD06U76C...

SUMMARY:
THE TIMING CHAIN BROKE IN HALF WHILE DRIVING DOWN THE HIGHWAY.
THIS PROBLEM CAUSED THE VEHICLE TO SHUT DOWN IN THE MIDDLE OF A
HIGHWAY LANE ALMOST CAUSING A WRECK. THE VEHICLE NEEDS A NEW
TIMING CHAIN AND GUIDES BUT NO REPAIRS HAVE BEEN MADE. *TR

CLASS ACTION COMPLAINT

## Safety Concerns

60.    In connection with its failure to disclose the fact that the Timing Chain Tensioning System is prone to premature failure, Nissan also risks the safety of occupants of the Subject Nissan Vehicles.  When the Subject Nissan Vehicles' Timing Chain Tensioning System fails, drivers of the Subject Nissan Vehicles can experience an inability to accelerate, an inability to maintain speed, and even catastrophic engine failure, potentially rendering the vehicle inoperable while it is moving.

61.    As discussed above, attached as Exhibit A is a true and correct copy of a service record from a Nissan dealership which describes the Timing Chain Tensioning System failure experienced by the owner of a 2005 Nissan Xterra while he was driving the vehicle.  This record notes that the vehicle "stopped running while driving" and after being restarted it only drove a "short distance" and "ran very rough."  It also noted that the timing chain was "either broken or stretched."  The Nissan dealership concluded that there was "possible internal engine damage present" and recommended that the owner replace the engine and/or remove the timing cover.  The Nissan dealership also quoted a Nissan engine at ***$9,895.00 + tax*** or a 68,000 mile used engine for ***$5,890.00 + tax***.

```
LABOR & PARTS-----------------------------------------------------------------
J# 1 10NIZ              ENGINE MECHANICAL              TECH(S):4672          110.00
              ENGINE TURNS OVER BUT DOES NOT START; CAR STOPPED RUNNING
              WHILE DRIVING, CAR RESTARTED AND DROVE A SHORT DISTANCE (RAN
              VERY ROUGH). WOULD NOT RESTART AFTER SHUTTING OFF. WAS TOLD
              AT BEACHLERS AUTOMOTIVE THAT HAD A POSSIBLE TIMING ISSUE.
              $110.00 DIAGNOSIS
              RAN CONSULT. NO FAULT CODES STORED IN ECM. MONITORED DATA;
              INTAKE TIMING #1 & #2 ADVANCED AT 35 DEGREES WHEN CRANKING
              OVER (TIMING IS OFF).  HAS INTERNAL UPPER & LOWER ENGINE
              NOISE PRESENT ALSO. TIMING CHAIN EITHER BROKEN OR STRETCHED.
              POSSIBLE INTERNAL ENGINE DAMAGE PRESENT. RECOMMEND REPLACING
              ENGINE AND/OR REMOVING TIMING COVER TO INSPECT FOR FURTHER
              DAMAGE POSSIBILITIES. ESTIMATE NISSAN ENGINE: $9895 + TAX/
              68K MILE USED ENGINE (NEALS) $5890 + TAX 90-DAY PARTS
              WARRANTY ONLY, $7100 + TAX 1-YR. PARTS & LABOR WARRANTY.
              21.0HR
              ---CUSTOMER DECLINED ANY ADDITIONAL DIAGNOSIS TIME AND/OR
              FURTHER REPAIRS---

                                        JOB #  1 TOTAL LABOR & PARTS      110.00
------------------------------------------------------------------------------
```

CLASS ACTION COMPLAINT

62.    As a result of the Timing Chain Tensioning System being prone to premature failure, drivers are unable to keep up with the normal flow of traffic, and are at an increased risk of a collision.  The reasonable expectation that the Subject Nissan Vehicles are safe to drive and ride in was, and is, material to Plaintiffs and other members of the Class.

63.    Indeed, in addition to the above, numerous drivers of the Subject Nissan Vehicles have reported their safety concerns to the NHTSA.  Some of those reports include the following (emphasis added):

| Make :<br>NISSAN | Model :<br>QUEST | Year : 2007 |
|---|---|---|
| Manufacturer : Nissan North America, Inc. | | |
| Crash :<br>No | Fire :<br>No | Number of Injuries: 0 |
| ODI ID Number :<br>10448556 | | Number of Deaths: 0 |
| Date Complaint<br>Filed: February<br>20, 2012 | | Date of Incident: December 15, 2011 |
| VIN :<br>5N1BV28U47N... | | |
| Component: ENGINE AND ENGINE COOLING | | |

Summary:
    LOUD SQUEALING NOISE FROM SECONDARY TIMING CHAIN TENSIONERS IN ENGINE. WAS TOLD IF TENSIONERS BREAK, **TIMING CHAIN WOULD RELEASE INTO ENGINE AND CAUSE A HAZARD**. DEALERSHIP FIXED IT- $1700 AND THE SECONDARY TENSIONERS ARE WORN AND CHEAP. THE NEW ONES ARE MUCH DIFFERENT. IF I HAD NOT HAD THE SQUEALING NOISE, THE TIMING CHAIN WOULD HAVE BEEN RELEASED INSIDE THE ENGINE. *TR

CLASS ACTION COMPLAINT

Make : Model : Year : 2004
NISSAN QUEST

Manufacturer : Nissan North America, Inc.

Crash : Fire : Number of Injuries: 0
No No

ODI ID Number : Number of Deaths: 0
10478369

Date Complaint
Filed: October 2, Date of Incident: September 5, 2012
2012

VIN :
5N1BV28U64N...

Component: ENGINE

Summary:
    MY NISSAN QUEST HAS BEEN MAKING A RATTLING NOISE THAT IS
PROGRESSIVELY GETTING WORSE. I TOOK IT IN TODAY AND WAS TOLD
THAT I HAD PROBLEMS WITH THE TIMING CHAIN AND THAT I SHOULD
TAKE IT TO A DEALER OR ENGINE SHOP THAT IS EQUIPPED TO FIX SUCH AN
ISSUE. ONE OF THE REASONS I FAVORED BUYING THIS CAR WAS BECAUSE
OF THE FACT THAT NISSAN USES A TIMING CHAIN RATHER THAN A TIMING
BELT. THUS, I WOULDN'T HAVE THE EXPENSE OF REPLACING A TIMING
BELT IN THE FUTURE. I WAS LEAD TO BELIEVE THAT TIMING CHAINS
WOULD NOT BE SOMETHING THAT I WOULD NEED TO FIX. BECAUSE THIS
PROBLEM IS PREVALENT AMONG QUEST OWNERS, I BELIEVE THAT NISSAN
SHOULD RECALL THEIR VEHICLES THAT SUFFER FROM THE SAME DESIGN
FLAW. **IF NISSAN DOESN'T ADDRESS THIS ISSUE, SOMEONE IS GOING TO
GET INJURED OR KILLED AS A RESULT OF ONE OF THEIR FAULTY
TIMING BELTS BREAKING WHILE ONE OF THEIR FAULTY CARS IS
BEING DRIVEN**. *TR

/ / /

/ / /

/ / /

## PLAINTIFFS' CLAIMS AGAINST NISSAN

### Plaintiff Kathy Shaw

64.    Plaintiff Kathy Shaw is a resident of Tampa, Florida.  Plaintiff Shaw purchased, for personal, family or household purposes, a new 2007 Nissan Pathfinder from CarMax in White Marsh, Maryland in or around March 2007.

65.    When Plaintiff Shaw purchased her 2007 Nissan Pathfinder, she relied on a reasonable expectation that the vehicle's Timing Chain Tensioning System did not pose an unavoidable safety risk.

66.    Plaintiff Shaw reviewed Nissan's promotional materials and other information, and had Nissan disclosed its knowledge of the Timing Chain Tensioning System defects when Plaintiff Shaw purchased her 2007 Nissan Pathfinder, she would have seen such disclosures and been aware of them.  Indeed, Nissan's omissions were material to Plaintiff Shaw.  Like all members of the Class, she would not have purchased her 2007 Nissan Pathfinder, or she would not have paid the purchase price charged by Nissan, had she known that the Timing Chain Tensioning System was prone to unavoidably dangerous and premature failure, or that she likely would have to either spend hundreds or thousands of dollars to repair the Timing Chain Tensioning System in the early years of vehicle operation and ownership, or sell the vehicle at a loss.

67.    Accordingly, Plaintiff Shaw has been monetarily damaged and suffered injury in fact as a result of Nissan's misconduct.

68.    Plaintiff Shaw drove her 2007 Nissan Pathfinder in a reasonably foreseeable manner, as it was intended to be used.  Nevertheless, on March 2, 2015, Plaintiff Shaw was required to take her vehicle to Courtesy Nissan in Tampa, Florida to repair her defective Timing Chain Tensioning System.  Below is a portion of the repair order concerning the required repairs to Plaintiff Shaw's Timing Chain Tensioning System:

| H | CUSTOMER REQUEST REPLACEMENT OF TIMING CHAIN AND SPARK PLUGS | | | |
|---|---|---|---|---|
| REPAIR | CPM | MISC REPAIR | 10.00 | 1,450.00 |
| Tech(s): 213067 | | | | |
| 13028-ZK01C | 2 | CHAIN-CAMSHAFT | | 65.00 |
| 13028-ZS00A | 1 | CHAIN-TIMING CAMSHAFT | | 104.93 |
| 13091-ZK00A | 1 | CHAIN GUIDE | | 59.99 |
| 13085-EA200 | 1 | GUIDE-CHAIN,TENSION SIDE | | 13.92 |
| 13085-EA200 | 1 | GUIDE-CHAIN,TENSION SIDE | | 13.46 |
| 15066-5E510 | 2 | SEAL-O RING W/SLEEVE | | 17.60 |
| 13510-7Y000 | 1 | SEAL-OIL,CRANKSHAFT FRONT | | 20.90 |
| 999MP-1217HP | 1 | THREEBOND 1217H GASKET MAKER - 75 GRAMS | | 18.49 |
| 13070-EA200 | 1 | TENSIONER ASSY-CHAIN | | 102.22 |
| 13097-ZK01C | 2 | TENSIONER FACE | | 14.80 |
| 15066-ZL80A | 2 | SEAL O RING (6.84MM) | | 10.66 |
| 22401-5M015 | 6 | PLUG-SPARK | | 77.88 |
| Pts:    519.85 | Lbr:    1,450.00 | Other:    0.00 | Total Line H: | 1,969.85 |

Story: 90213    PERFORM TIMING CHAIN KIT AND REPLACE SPARK PLUGS
EVEN THOUGH I DIDN'T HAVE TO REMOVE INTAKE PLENUM.

**Plaintiff Hartwell Steele**

69.    Plaintiff Hartwell Steele is a resident of Rock Island, Illinois.  Plaintiff Steele purchased, for personal, family, or household purposes, a used 2005 Nissan Xterra in or around December 2007 in Davenport, Iowa.

70.    When Plaintiff Steele purchased his 2005 Nissan Xterra, he relied on a reasonable expectation that the vehicle's Timing Chain Tensioning System did not pose an unavoidable safety risk.

71.    Plaintiff Steele reviewed Nissan's promotional materials and other information, and had Nissan disclosed its knowledge of the Timing Chain Tensioning System defects when Plaintiff Steele purchased his 2005 Nissan Xterra, he would have seen such disclosures and been aware of them. Indeed, Nissan's omissions were material to Plaintiff Steele.  Like all members of the Class, he would not have purchased his 2005 Nissan Pathfinder, or he would not have paid the purchase price charged by Nissan, had he known that the Timing Chain Tensioning System was prone to unavoidably dangerous and premature failure, or that he likely would have to either spend hundreds

28

1    or thousands of dollars to repair the Timing Chain Tensioning System in the early years

2    of vehicle operation and ownership, or sell the vehicle at a loss.

3        72.    Accordingly, Plaintiff Steele has been monetarily damaged and suffered

4    injury in fact as a result of Nissan's misconduct. Plaintiff Steele drove his 2005 Nissan

5    Xterra in a reasonably foreseeable manner, as it was intended to be used.

6        73.    In or around fall 2014, Plaintiff Steele's vehicle began to make a repetitive

7    tapping noise coming from the engine bay.

8        74.    In December 2015, Plaintiff Steele was driving on a highway. Suddenly, the

9    tapping noise became louder and the vehicle's engine stalled. Mr. Steele lost power

10   steering, power brakes, and power to the engine. Mr. Steele was forced to coast to the

11   side of the highway. Fortunately, there was little traffic.

12       75.    On December 22, 2015, Plaintiff Steele brought his vehicle to Beachler's

13   Vehicle Care & Repair Courtesy Nissan in Peoria, Illinois, to address his defective

14   Timing Chain Tensioning System. Beachler inspected Mr. Steele's vehicle and found

15   that the vehicle would not start, and suspected that a problem with the timing chain

16   caused the noise and no spark concern. Beachler recommended that Plaintiff Steele bring

17   his vehicle to a Nissan dealership.

18       76.    On December 29, 2015, Plaintiff Steele brought his vehicle to Uftring

19   Nissan in Peoria, Illinois.  As reflected in the repair order excerpted below, the

20   dealership found that the engine timing was "off" and that "TIMING CHAIN EITHER

21   BROKEN OR STRETCHED. POSSIBLE INTERNAL ENGINE DAMAGE

22   PRESENT." The dealership informed Plaintiff Steele that he would have to pay

23   thousands of dollars to replace his vehicle's engine. Plaintiff Steele had to pay $110 for

24   this diagnosis.

25

26

27

28

CLASS ACTION COMPLAINT

```
LABOR & PARTS------------------------------------------------
J# 1 10NIZ        ENGINE MECHANICAL          TECH(S):4672           110.00
          ENGINE TURNS OVER BUT DOES NOT START: CAR STOPPED RUNNING
          WHILE DRIVING. CAR RESTARTED AND DROVE A SHORT DISTANCE (RAN
          VERY ROUGH). WOULD NOT RESTART AFTER SHUTTING OFF. WAS TOLD
          AT BEACHLERS AUTOMOTIVE THAT HAD A POSSIBLE TIMING ISSUE.
          $110.00 DIAGNOSIS
          RAN CONSULT. NO FAULT CODES STORED IN ECM. MONITORED DATA:
          INTAKE TIMING #1 & #2 ADVANCED AT 35 DEGREES WHEN CRANKING
          OVER (TIMING IS OFF).  HAS INTERNAL UPPER & LOWER ENGINE
          NOISE PRESENT ALSO. TIMING CHAIN EITHER BROKEN OR STRETCHED.
          POSSIBLE INTERNAL ENGINE DAMAGE PRESENT. RECOMMEND REPLACING
          ENGINE AND/OR REMOVING TIMING COVER TO INSPECT FOR FURTHER
          DAMAGE POSSIBILITIES. ESTIMATE NISSAN ENGINE: $9895 + TAX/
          68K MILE USED ENGINE (NEALS) $5890 + TAX 90-DAY PARTS
          WARRANTY ONLY. $7100 + TAX 1-YR. PARTS & LABOR WARRANTY.
          21.0HR
          ---CUSTOMER DECLINED ANY ADDITIONAL DIAGNOSIS TIME AND/OR
          FURTHER REPAIRS---

                                   JOB #  1 TOTAL LABOR & PARTS       110.00
```

## STATUTE OF LIMITATIONS

### Fraudulent Concealment and *American Pipe* Tolling

77.    Any applicable statutes of limitations have been tolled by Nissan's knowing and active concealment, denial, and misleading actions, as alleged herein.  Plaintiffs and other members of the Class defined below were kept ignorant of critical information required for the prosecution of their claims, without any fault or lack of diligence on their part.  Plaintiffs and other members of the Class could not reasonably have discovered the true latent nature of the Timing Chain Tensioning System defect or any of the issues and facts alleged herein.

78.    Nissan is under a continuous duty to disclose to Plaintiffs and other members of the Class the true character, quality and nature of the Subject Nissan Vehicles, and to disclose the existence of the material failure of the Timing Chain Tensioning System.  Nissan knowingly, affirmatively and actively concealed the true character, quality and nature of the Timing Chain Tensioning System defect.  Plaintiffs and other members of the Class reasonably relied upon Nissan's knowing, affirmative and active concealment.  Based on the foregoing, Nissan is estopped from relying on any statutes of limitation as a defense in this action.

79.    The causes of action alleged herein did or will only accrue upon discovery

of the latent Timing Chain Tensioning System defect, as a result of Nissan's fraudulent concealment of the Timing Chain Tensioning System defect.  Plaintiffs and other members of the Class did not discover, and could not have discovered, through the exercise of reasonable diligence, the true nature of the Timing Chain Tensioning System defect.

80.    Moreover, on January 31, 2013, a similar class action as this matter, *Falco et al. v. Nissan North America, et al.* No. 2:13-cv-00686 ("Falco Complaint"), was removed to this District.  In their Third Amended Complaint, plaintiffs in that matter identified the same Defendants and the proposed nationwide class in this matter is identical as the proposed class in the Falco Complaint.  (Dkt. 90, ¶ 110).  Thus, under *American Pipe and Construction Co., et. al. v. State of Utah, et. al.*, 414 U.S. 538 (1974), the filing of the Falco Complaint suspended the running of the limitations period.  Thus, this action is timely filed.

81.    Plaintiffs and members of the Classes were or have been unable to obtain vital information bearing on their claims absent any fault or lack of diligence on their part.  As further set forth in this Complaint, Plaintiffs were not on inquiry notice of Defendants' wrongdoing and had no duty to initiate an investigation of any nature because the design defects concerning the Timing Chain Tensioning System were concealed.  Plaintiffs did not have any reason to know of the Defendants' unlawful conduct described herein and did not and could not have known of Defendants' violations of law.

82.    Plaintiffs were relieved of any duty to investigate because they reasonably and justifiably relied on Defendants to fulfill their lawful duties.  Even assuming there had been some indication of wrongdoing (which there was not), and Plaintiffs had attempted to investigate, such investigation would have been futile because it would not have uncovered the true, unlawful nature of Defendants' criminal enterprise and profiteering schemes alleged herein.

## CLASS ACTION ALLEGATIONS

83.    Plaintiffs bring this action, on behalf of themselves and all other similarly situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

84.    The class Plaintiffs seeks to represent (the "Class") is defined as follows:
> All residents of the United States who purchased or leased 2004-2008 Nissan Maxima vehicles, 2004-2009 Nissan Quest vehicles, 2004-2006 Nissan Altima vehicles (with the VQ35 engine), 2005-2007 Nissan Pathfinder vehicles, 2005-2007 Nissan Xterra vehicles, or 2005-2007 Nissan Frontier vehicles (with the VQ40 engine).  Excluded from the Class are Nissan's officers, directors, and employees (the "Nationwide Class").

85.    Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveals that the Class should be expanded or otherwise modified.

86.    Plaintiffs reserve the right to establish subclasses where appropriate.

87.    This action is brought and properly may be maintained as a class action pursuant to the provisions of the Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2) or (b)(3) and satisfies the requirements thereof.

88.    <u>Numerosity</u>:  While the exact number of members of the Class is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, membership in the Class is ascertainable based upon the records maintained by Nissan.  At this time, Plaintiffs are informed and believe that the Class includes thousands of members.

89.    In particular, Plaintiffs are informed and believe that in 2004, Nissan sold 76,376 Maxima vehicles, 46,430 Quest vehicles, and 235,998 Altima vehicles.  Plaintiffs are informed and believe that in 2005, Nissan sold 75,425 Maxima vehicles, 40,357 Quest vehicles, 255,371 Altima vehicles, 76,156 Pathfinder vehicles, 72,447 Xterra vehicles, and 72,838 Frontier vehicles.  Plaintiffs are informed and believe that in 2006, Nissan sold 69,763 Maxima vehicles, 31,905 Quest vehicles, 232,457 Altima vehicles, 73,124 Pathfinder vehicles, 62,325 Xterra vehicles, and 77,510 Frontier vehicles.  Plaintiffs are informed and believe that in 2007, Nissan sold 52,574 Maxima vehicles,

28,590 Quest vehicles, 63,056 Pathfinder vehicles, 51,355 Xterra vehicles, and 64,397 Frontier vehicles.  Plaintiffs are informed and believe that in 2008, Nissan sold 47,072 Maxima vehicles and 18,252 Quest vehicles.  Plaintiffs are informed and believe that in 2009, Nissan sold 8,437 Quest vehicles.

90.     Therefore, the Class is sufficiently numerous that joinder of all members of the Class in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

91.     Ascertainability:  Names and addresses of members of the Class are available from Nissan's records.  Notice can be provided to the members of the Class through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under federal law.

92.     Typicality:  Plaintiffs' claims are typical of the claims of other members of the Class which they seek to represent under Federal Rule of Civil Procedure 23(a)(3) because Plaintiffs and each member of the Class has been subjected to the same deceptive and improper practices and has been damaged in the same manner thereby.

93.     Adequacy:  Plaintiffs will fairly and adequately represent and protect the interests of the Class as required by Federal Rule of Civil Procedure 23(a)(4).  Plaintiffs are adequate representatives of the Class, because they have no interests that are adverse to the interests of the members of the Class.  Plaintiffs are committed to the vigorous prosecution of this action and, to that end, Plaintiffs have retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

94.     Superiority:  A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

(a)     The expense and burden of individual litigation make it economically unfeasible for members of the Class to seek to redress their "negative value" claims other than through the procedure of a class action.

(b)    If separate actions were brought by individual members of the Class, the resulting duplicity of lawsuits would cause members to seek to redress their "negative value" claims other than through the procedure of a class action; and

(c)    Absent a class action, Nissan likely would retain the benefits of its wrongdoing, and there would be a failure of justice.

95.    Common questions of law and fact exist as to the members of the Class, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions that affect individual members of the Class within the meaning of Federal Rule of Civil Procedure 23(b)(3).

96.    The common questions of fact include, but are not limited to, the following:

(a)    Whether the Timing Chain Tensioning System installed in the Subject Nissan Vehicles is prone to premature failure;

(b)    Whether BorgWarner manufactured and supplied the Timing Chain Tensioning System used by Nissan in the Subject Nissan Vehicles;

(c)    Whether Nissan knew or should have known that Timing Chain; Tensioning System installed in the Subject Nissan Vehicles is prone to premature failure;

(d)    Whether BorgWarner knew or should have known that Timing Chain; Tensioning System installed in the Subject Nissan Vehicles is prone to premature failure;

(e)    Whether Nissan had a duty to disclose that the Timing Chain Tensioning System installed in the Subject Nissan Vehicles is prone to premature failure;

(f)    Whether Nissan breached its duty to disclose that the Timing Chain Tensioning System is prone to premature failure;

(g)    Whether Nissan omitted, actively concealed and/or failed to disclose material facts to Plaintiffs and other members of the Class about the

34

1    premature failure of the Timing Chain Tensioning System in the
2    Subject Nissan Vehicles;

3    (h)    Whether Nissan and BorgWarner communicated about the Timing
4    Chain Tensioning System defects;

5    (i)    Whether Nissan's conduct violated RICO;

6    (j)    Whether Plaintiffs and other members of the Class are entitled to
7    damages and other monetary relief, and, if so, in what amount; and

8    (k)    Whether Plaintiffs and other members of the Class are entitled to treble
9    damages.

10    97.    In the alternative, this action is certifiable under the provisions of Federal
11    Rule of Civil Procedure 23(b)(1) and/or (b)(2) because:

12    (a)    The prosecution of separate actions by individual members of the
13    Class would create a risk of inconsistent or varying adjudications with
14    respect to individual members of the Class which would establish
15    incompatible standards of conduct for Nissan;

16    (b)    The prosecution of separate actions by individual members of the
17    Class would create a risk of adjudications as to them which would, as a
18    practical matter, be dispositive of the interests of the other members of
19    the Class not parties to the adjudications, or substantially impair or
20    impede their ability to protect their interests; and

21    (c)    Nissan has acted or refused to act on grounds generally applicable to
22    the Class, thereby making appropriate final injunctive relief or
23    corresponding declaratory relief with respect to the Class as a whole
24    and necessitating that any such relief be extended to members of the
25    Class on a mandatory, class-wide basis.

26    98.    Plaintiffs are not aware of any difficulty that will be encountered in the
27    management of this litigation that should preclude its maintenance as a class action.

28    **CLAIMS FOR RELIEF**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT I
## Violation of 18 U.S.C. § 1962(c), the Racketeer Influenced and Corrupt Organizations Act

99.   Plaintiffs hereby incorporate by reference each preceding paragraph as though fully set forth herein.

100.   Plaintiffs bring this Count on behalf of themselves and the other members of the Nationwide Class against Nissan USA and Nissan Japan (collectively, for this Count, referred to as the "Nissan Defendants").

101.   Nissan USA and Nissan Japan are "persons" under 18 U.S.C. § 1961(3) because they are capable of holding, and do hold, "a legal or beneficial interest in property."

102.   The Nissan Defendants violated 18 U.S.C. § 1962(c) by participating in or conducting the affairs of the Timing Chain Tensioning System Defect Enterprise (as defined below) through a pattern of racketeering activity.  Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).

103.   Plaintiffs and other members of the Class are "person[s] injured in his or her business or property" by reason of the Nissans Defendants' violation of RICO within the meaning of 18 U.S.C. § 1964(c).

104.   The following persons, and others presently unknown, have been members of and constitute an "association-in-fact enterprise" within the meaning of RICO, and will be referred to herein collectively as the Timing Chain Tensioning System Defect Enterprise:

      a.   The Nissan Defendants, who designed, manufactured, and sold thousands of Subject Nissan Vehicles they knew were equipped with a defective Timing Chain Tensioning System, and based on information and belief, the scope and nature of which they

36

1    concealed from the public and regulators for more than a

2    decade and still refuse to entirely acknowledge;

3    b.    The Nissans Defendants' Officers, Executives, and Engineers,

4    who have collaborated and colluded with each other and with

5    other associates in fact in the Timing Chain Tensioning System

6    Defect Enterprise to deceive Plaintiffs and other members of

7    the Class into purchasing dangerous and defective vehicles, and

8    actively concealing the dangerous and defective Timing Chain

9    Tensioning System from Plaintiffs and other members of the

10    Class; and

11    c.    BorgWarner, who manufactured and supplied the Nissan

12    Defendants with thousands of Timing Chain Tensioning

13    System's knowing that they were defective and being installed

14    in the Subject Nissan Vehicles.

15    105.    The Timing Chain Tensioning System Defect Enterprise, which engaged in,

16    and whose activities affected interstate and foreign commerce, is an association-in-fact of

17    individuals and corporate entities within the meaning of 18 U.S.C. § 1961(4) and consists

18    of "persons" associated together for a common purpose.  The Timing Chain Tensioning

19    System Defect Enterprise had an ongoing organization with an ascertainable structure,

20    and functioned as a continuing unit with separate roles and responsibilities.

21    106.    While the Nissan Defendants participated in the conduct of the Timing Chain

22    Tensioning System Defect Enterprise, they had an existence separate and distinct from the

23    Timing Chain Tensioning System Defect Enterprise.  Further, the Timing Chain

24    Tensioning System Defect Enterprise was separate and distinct from the pattern of

25    racketeering in which the Nissan Defendants have engaged.

26    107.    At all relevant times, the Nissan Defendants operated, controlled or managed

27    the Timing Chain Tensioning System Defect Enterprise, through a variety of actions.  The

28    Nissan Defendants' participation in the Timing Chain Tensioning System Defect

37

Enterprise was necessary for the successful operation of its scheme to defraud because the Nissan Defendants designed, manufactured, and sold thousands of Subject Nissan Vehicles equipped with the defective Timing Chain Tensioning System, and based on information and belief, concealed the nature and scope of the defective Timing Chain Tensioning System, and profited from such concealment.

108.    The members of the Timing Chain Tensioning System Defect Enterprise all served a common purpose: to design, manufacture, distribute, test, and sell Subject Nissan Vehicles equipped with the defective Timing Chain Tensioning System to Plaintiffs and other members of the Class, and thereby maximize the revenue and profitability of the Timing Chain Tensioning System Defect Enterprise's members.  The members of the Timing Chain Tensioning System Defect Enterprise shared the bounty generated by the enterprise, *i.e.*, by sharing the benefit derived from increased sales revenue generated by the scheme to defraud.  Each member of the Timing Chain Tensioning System Defect Enterprise benefited from the common purpose: the Nissan Defendants sold or leased more Subject Nissan Vehicles, and received more for those vehicles, than they would have otherwise had the scope and nature of the defective Timing Chain Tensioning System not been concealed; and BorgWarner sold more defective Timing Chain Tensioning System's to the Nissan Defendants than they would have otherwise had the scope and nature of the defective Timing Chain Tensioning System not been concealed.

**Pattern of Racketeering Activity**

109.    The Nissan Defendants conducted and participated in the conduct of the affairs of the Timing Chain Tensioning System Defect Enterprise through a pattern of racketeering activity that, based on information and belief, began no later than 2003, and consisted of numerous and repeated violations of the federal mail and wire fraud statutes, which prohibit the use of any interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud).

110.    For the Nissan Defendants, the purpose of the scheme to defraud was to

conceal the scope and nature of the Timing Chain Tensioning System defects found in the Subject Nissan Vehicles in order to sell more Subject Nissan Vehicles, to sell them at a higher price or for a higher profit, and to avoid incurring the expenses associated with repairing the Timing Chain Tensioning System defects, investigations by federal regulators, and the costs of recalls.  By concealing the scope and nature of the Timing Chain Tensioning System defects, BorgWarner also continued to knowingly sell defective Timing Chain Tensioning Systems to the Nissan Defendants that it knew or should have known were being installed into Subject Nissan Vehicles.

111.   Plaintiffs allege, upon information and belief, that the Nissan Defendants were well aware of the potential safety concerns associated with Timing Chain Tensioning System defects, but intentionally subjected Plaintiffs and other members of the Class to those risks or consciously disregarded those risks in order to maximize their profits.

112.   To further the scheme to defraud, the Nissan Defendants concealed the nature and scope of the Timing Chain Tensioning System defects.  Notwithstanding its knowledge of the potential safety concerns associated with Timing Chain Tensioning System defects, Nissan chose to issue multiple TSBs to Nissan dealerships, informing them that it was necessary to replace certain elements of the Timing Chain Tensioning System, but Nissan did not inform consumers about the TSBs.  Furthermore, Nissan's TSBs failed to provide a permanent solution to remedy all of the Timing Chain Tensioning System defects.

113.   To further the scheme to defraud, the Nissan Defendants concealed the nature and scope of the Timing Chain Tensioning System defects from federal regulators, enabling it to escape investigation and costs associated with recalls for more than a decade.

114.   Plaintiffs allege, upon information and belief, that the Nissan Defendants devised and furthered the scheme to defraud by the use of mail, telephone, and internet, and transmitted, or caused to be transmitted, by means of mail and wire communications

travelling in interstate or foreign commerce, writing(s) and/or signal(s), including, but not limited to, communications with members of the Timing Chain Tensioning System Defect Enterprise.

115.   The Nissan Defendants utilized the interstate and international mail and wires for purpose of obtaining money or property by means of the omissions and false pretenses described herein.

116.   The Nissan Defendants' pattern of racketeering activity in violation of the mail and wire fraud statutes included, but was not limited to, the following:

      a.   Upon information and belief, the Nissan Defendants transmitted or caused to be transmitted, by means of mail and/or wire communications, traveling in interstate and/or foreign commerce, between offices in Japan and/or Michigan and/or Tennessee and/or Ithaca, New York, communications between the Nissan Defendants and BorgWarner as early as 2003, and in subsequent years, concerning the Timing Chain Tensioning System defects;

      b.   The Nissan Defendants' transmitted or caused to be transmitted, by means of mail and/or wire communications from its offices in Tennessee and/or Japan, Technical Service Bulletins ("TSBs") to their network of Nissan dealerships on or around July 17, 2007, April 17, 2009, and December 14, 2009.  Nissan undertook affirmative efforts to conceal the Timing Chain Tensioning System defects from Plaintiffs and other members of the Class.  Notwithstanding Nissan's knowledge of the Timing Chain Tensioning defects that, based on information and belief, was acquired no later than 2003 from numerous communications with BorgWarner and testing conducted by both the Nissan Defendants and BorgWarner,

the TSBs failed to provide a permanent solution to remedy all of the Timing Chain Tensioning System defects and failed to communicate that the Timing Chain Tensioning Systems is prone to unavoidable premature failure and presents a serious safety issue;

c.    Plaintiffs allege, upon information and belief, that Nissan USA transmitted or caused to be transmitted, by means of mail and/or wire communications from its office in Tennessee, warranty data pertaining to the Timing Chain Tensioning System defects, to Nissan Japan's offices in Japan;

d.    The Nissan Defendants' transmitted or caused to be transmitted, by means of mail and/or wire communications from its offices in Japan and/or Tennessee, advertisements concerning the Subject Nissan Vehicles to the public, including Plaintiffs and other members of the Class, that concealed the fact that the defective Timing Chain Tensioning System is prone to unavoidable premature failure and presents a serious safety issue; and

e.    On information and belief, the Nissan Defendants' transmitted or caused to be transmitted, by means of mail and/or wire communications from its offices in Japan and/or Tennessee, correspondence and communications with the public through U.S. mail, its website (www.nissanusa.com), and its customer hotlines that concealed the fact that the defective Timing Chain Tensioning System is prone to unavoidable premature failure and presents a serious safety issue.

117.    The Nissan Defendants' conduct in furtherance of this scheme was intentional.  Plaintiffs and other members of the Class were directly harmed as a result

CLASS ACTION COMPLAINT

of the Nissan Defendants' intentional conduct.  Plaintiffs and other members of the Class relied on the Nissan Defendants' material omissions.

118.   As alleged, upon information and belief, the Nissan Defendants engaged in a pattern of related and continuous predicate acts beginning as early as 2003.  The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of defrauding Plaintiffs and other members of the Class and obtaining significant monies and revenues from them while providing Subject Nissan Vehicles worth less than the purchase price paid.  The predicate acts also had the same or similar results, participants, victims, and methods of commission. The predicate acts were related and not isolated events.

119.   The predicate acts all had the purpose of generating significant revenue and profits for the Nissan Defendants at the expense of Plaintiffs and other members of the Class.  The predicate acts were committed or caused to be committed by the Nissan Defendants through their participation in the Timing Chain Tensioning System Defect Enterprise and in furtherance of its fraudulent scheme, and were interrelated in that they involved obtaining Plaintiffs' and members of the Class's funds and avoiding the expenses associated with remediating the defective nature of the Timing Chain Tensioning System.

120.   By reason of and as a result of the conduct of the Nissan Defendants, and in particular, its pattern of racketeering activity, Plaintiffs and other members of the Class have been injured in their business and/or property in multiple ways, including, but not limited to, the following:

a.     out-of-pocket payments to repair and replace the defective Timing Chain Tensioning System;

b.     overpayment for leased or purchased Subject Nissan Vehicles, in that Plaintiffs believed they were paying for vehicles with a safe and defect-free Timing Chain Tensioning System and obtained vehicles with anything but, and were deprived of the

42

benefit of their bargain; and

    c.    the value of the Subject Nissan Vehicles has diminished, thus reducing their resale value.

121.   The Nissan Defendants' violations of 18 U.S.C. § 1962(c) have directly and proximately caused injuries and damages to Plaintiffs and other members of the Class, and Plaintiffs and other members of the Class are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief and costs and reasonable attorneys' fees pursuant to 18 U.S.C. §§ 1964(a) and 1964(c).

## COUNT II
### Violation of 18 U.S.C. § 1962(d), the Racketeer Influenced and Corrupt Organizations Act

122.   Plaintiffs hereby incorporate by reference each preceding paragraph as though fully set forth herein.

123.   Plaintiffs bring this Count on behalf of themselves and the other members of the Nationwide Class against Nissan USA and Nissan Japan (collectively, for this Count, referred to as the "Nissan Defendants").

124.   At all relevant times, the Nissan Defendants were associated with the Timing Chain Tensioning System Defect Enterprise and agreed and conspired to violate 18 U.S.C. § 1962(c), that is, agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the Timing Chain Tensioning System Defect Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).  Under § 1962(d), it is unlawful for "any person to conspire to violate" § 1962(c), among other provisions.  18 U.S.C. § 1962(d).

125.   Plaintiffs allege, upon information and belief, that no later than 2003, the Nissan Defendants and BorgWarner shared knowledge and information that was exclusively in their possession about the defective nature of the Timing Chain Tensioning System, investigated the possible causes of defects, and have prevented the release of pertinent information surrounding the nature of the defects and the safety risks the

defective Timing Chain Tensioning System poses.  This close cooperation on issues surrounding the Timing Chain Tensioning System defects and joint participation is evidence of the conspiracy.

126.   The Nissan Defendants and BorgWarner committed and caused to be committed a series of overt acts in furtherance of the conspiracy.

127.   Plaintiffs allege, upon information and belief, that no later than 2003, the Nissan Defendants and BorgWarner engaged in conduct and overt acts in furtherance of an ongoing conspiracy, including but not limited to, communicating between each other about the Timing Chain Tensioning System defects and sharing results among each other from internal testing concerning the Timing Chain Tensioning System defects.  At no time did the Nissan Defendants' or BorgWarner ever disclose to consumers or federal regulators that the Timing Chain Tensioning System installed in the Subject Nissan Vehicles is prone to unavoidable premature failure and presents a serious safety issue and places the driver and passengers at a risk of harm.

128.   The Nissan Defendants agreed to and did conduct and participate in the conduct of the Timing Chain Tensioning System Defect Enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of defrauding Plaintiffs and other members of the Class, as more fully described in the prior Count.

129.   As a direct and proximate result of the Nissan Defendants' and BorgWarner's conspiracy and violation of 18 U.S.C. § 1962(d), Plaintiffs and other members of the Class have been injured in their business and/or property in multiple ways, including, but not limited to, the following:

> a.    out-of-pocket payments to repair and replace the defective Timing Chain Tensioning System;
>
> b.    overpayment for leased or purchased Subject Nissan Vehicles, in that Plaintiffs believed they were paying for vehicles with a safe and defect-free Timing Chain Tensioning System and obtained vehicles with anything but, and have been deprived

of the benefit of their bargain; and

c.     the Subject Nissan Vehicles' value has diminished, thus reducing their resale value.

130.   Had the Nissan Defendants been entirely forthcoming with the public in a timely manner about the Timing Chain Tensioning System defects and the grave risks it posed to countless vehicle occupants, as was their duty, Plaintiffs would not have suffered these harms.  The Nissan Defendants and BorgWarner's conspiracy to commit mail fraud and/or wire fraud was reasonably calculated to deceive persons of ordinary prudence and comprehension, and was committed with reckless indifference to the truth if not the outright intent to deceive.

131.   The Nissan Defendants' and BorgWarner's conspiracy to violate 18 U.S.C. § 1962(c) was committed with the specific intent to defraud, thereby entitling Plaintiffs to treble damages under 18 U.S.C. § 1964(c).

132.   The Nissan Defendants' and BorgWarner's violations of 18 U.S.C. § 1962(d) have directly and proximately caused injuries and damages to Plaintiffs and other members of the Class, and Plaintiffs and other members of the Class are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief and costs and reasonable attorneys' fees pursuant to 18 U.S.C. §§ 1964(a) and 1964(c).

## PRAYER FOR RELIEF

Plaintiffs, and on behalf of themselves and all others similarly situated, request the Court enter judgment against the Nissan Defendants, as follows:

1.     Certifying the Class, as requested herein;

2.     Ordering that the Nissan Defendants are financially responsible for notifying all members of the Class of the alleged omissions and active concealment of material facts discussed herein;

3.     Awarding Plaintiffs and the members of the Class compensatory damages in an amount according to proof at trial;

1  4.  Awarding to Plaintiffs and the Class treble damages;

2  5.  Awarding interest on the monies wrongfully obtained from the date of

3  collection through the date of entry of judgment in this action;

4  6.  Awarding attorneys' fees, expenses, and recoverable costs reasonably

5  incurred in connection with the commencement and prosecution of this action; and

6  7.  For such other and further relief as the Court deems just and proper.

7  Dated:  June 17, 2016                    BARON & BUDD, P.C.

8                                        By:  /s/ Mark Pifko
9                                             Mark Pifko

10                                       Roland Tellis (SBN 186269)
                                         rtellis@baronbudd.com
11                                       Mark Pifko (SBN 228412)
                                         mpifko@baronbudd.com
12                                       BARON & BUDD, P.C.
                                         15910 Ventura Boulevard, Suite 1600
13                                       Encino, California  91436
14                                       Telephone:    (818) 839-2333
                                         Facsimile:    (818) 986-9698
15
                                         Payam Shahian (SBN 228406)
16                                       pshahian@slpattorney.com
17                                       STRATEGIC LEGAL PRACTICES, APC
                                         1875 Century Park East, Suite 700
18                                       Los Angeles, California  90067
                                         Telephone:    (310) 277-1040
19                                       Facsimile:    (310) 943-3838

20                                       Jordan Lurie (SBN 130013)
21                                       Jordan.Lurie@capstonelawyers.com
                                         Cody Padgett (SBN 275553)
22                                       Cody.Padgett@capstonelawyers.com
                                         CAPSTONE LAW APC
23                                       1840 Century Park East, Suite 450
24                                       Los Angeles, California  90067
                                         Telephone:    (310) 556-4811
25                                       Facsimile:    (310) 943-0396

26

27

28

CLASS ACTION COMPLAINT

1               Dara Tabesh (SBN 230434)
dara.tabesh@ecotechlaw.com
2               ECOTECH LAW GROUP, P.C.
333 First Street, Suite C
3               San Francisco, California  94105
Telephone:    (415) 503-9134
4               Facsimile:    (415) 651-8639

5

6               Attorneys for Plaintiffs
KATHY SHAW AND HARTWELL
7               STEELE, individually, and on behalf of
other members of the public similarly
8               situated

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiffs request trial by jury on all issues so triable.

Respectfully submitted,

Dated:  June 17, 2016                    BARON & BUDD, P.C.

By:  /s/ Mark Pifko
        Mark Pifko

Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone:    (818) 839-2333
Facsimile:     (818) 986-9698

Payam Shahian (SBN 228406)
pshahian@slpattorney.com
STRATEGIC LEGAL PRACTICES, APC
1875 Century Park East, Suite 700
Los Angeles, California  90067
Telephone:    (310) 277-1040
Facsimile:     (310) 943-3838

Jordan Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Cody Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
CAPSTONE LAW APC
1840 Century Park East, Suite 450
Los Angeles, California  90067
Telephone:    (310) 556-4811
Facsimile:     (310) 943-0396

CLASS ACTION COMPLAINT

Dara Tabesh (SBN 230434)
dara.tabesh@ecotechlaw.com
EcoTech Law Group, P.C.
333 First Street, Suite C
San Francisco, California  94105
Telephone:    (415) 503-9134
Facsimile:    (415) 651-8639

Attorneys for Plaintiffs
KATHY SHAW AND HARTWELL
STEELE, individually, and on behalf of
other members of the public similarly
situated